ROBERT S. SHWARTS (CA SBN 196803)
rshwarts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone: (415) 619-3418
Facsimile: (415) 619-3505

ANGELA COLT (CA SBN 286275)
acolt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

*Attorneys for Defendant*
*Sony Interactive Entertainment LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW GARCIA, EDWARD HEYCOCK, JASON MENDOZA, and JOHN SALINAS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SONY INTERACTIVE ENTERTAINMENT, LLC, and SONY CORPORATION OF AMERICA,<br><br>Defendants. | Case No. 3:26-cv-6016-VC<br><br>**(1) SONY INTERACTIVE ENTERTAINMENT LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS, OR ALTERNATIVELY, DISMISS COMPLAINT;**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; and**<br><br>Filed Under Separate Cover:<br>**(3) DECLARATION OF MARC HORNE AND EXHIBITS.**<br><br>Hearing Date: October 1, 2026<br>Time: 10:00 a.m.<br>**Judge: Hon. Vince Chhabria**<br>**Courtroom: 3 – 17th Floor** |

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 1, 2026, at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Vince Chhabria, Courtroom 3 on the 17th Floor of 450 Golden Gate Avenue, San Francisco, CA, 94102, Defendant Sony Interactive Entertainment LLC ("SIE") will and hereby does respectfully move this Court to compel arbitration pursuant to the Federal Arbitration Act and stay proceedings, or in the alternative, dismiss the complaint with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs lack standing and fail to state a claim for which relief can be granted. The grounds for this Motion are as follows:

In accepting the PlayStation Terms of Service ("PlayStation Terms"), **Plaintiffs agreed to individual binding arbitration of any disputes with SIE arising out of or relating to their use of PlayStation products,** including the games at issue in the complaint. Plaintiffs waived any right to represent a class in the PlayStation Terms. Plaintiffs were offered the opportunity to opt-out of the individual binding arbitration agreements and class-action waiver, but no plaintiff opted out. Plaintiffs' claims arise out of their obtaining and using SIE PlayStation digital games. Specifically, Plaintiffs allege that the words "Buy Now" and "Confirm Purchase" are false and misleading because they thought they would be receiving an outright ownership of the video games they bought, rather than a software license to them. Accordingly, Plaintiffs' agreements to individually arbitrate cover the dispute here, and the case should be compelled to binding arbitration and stayed pending completion of the arbitration.

In the alternative, the Court should dismiss Plaintiffs' claims for false advertising under Cal. Bus. & Prof. Code § 17500 and § 17500.6 and for violation of the Consumer Legal Remedies Act under Cal. Civ. Code § 1770 because they lack standing and fail to plausibly allege: (a) that reasonable consumers would be misled; (b) that any of SIE's statements is material to a purchasing decision; (c) that Plaintiffs relied on any of SIE's statements to their detriment; and (d) that Plaintiffs have been injured as a result.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

Authorities in Support hereof, the concurrently filed Declaration of Marc Horne and supporting exhibits, all pleadings and papers in this action, all matters of which this Court may take judicial notice, and upon such other matters as may be presented to the Court.

Dated: August 21, 2026

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Robert S. Shwarts*
Robert S. Shwarts

*Attorneys for Defendant*
*Sony Interactive Entertainment LLC*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. ISSUES TO BE DECIDED .......... 2
III. RELEVANT FACTS .......... 2
  A. PlayStation Store and Terms of Service .......... 2
  B. The Software Product Licensing Agreement (“SPLA”) .......... 5
IV. LEGAL STANDARD .......... 5
V. THE CASE SHOULD BE COMPELLED TO ARBITRATION AND STAYED PENDING ARBITRATION, OR ALTERNATIVELY DISMISSED WITH PREJUDICE .......... 7
  A. The Court Should Compel Arbitration .......... 7
    1. Plaintiffs Agreed to Individual Binding Arbitration .......... 7
    2. Issues of Arbitrability and Scope Are Delegated to the Arbitrator .......... 8
    3. The Arbitration Agreement and Class-Action Waiver Are Valid and Enforceable .......... 9
  B. The Court Should Stay the Case While Arbitration Proceeds .......... 9
  C. In the Alternative, the Court Should Dismiss the Case with Prejudice .......... 10
    1. Plaintiffs Lack Standing .......... 10
    2. Plaintiffs Fail to Plausibly Allege Any Injury .......... 11
    3. Reasonable Consumers Would Not Be Misled .......... 11
    4. Plaintiffs Fail to Plausibly Allege Materiality or an Actionable Omission .......... 12
    5. Plaintiffs Failed to Plausibly Plead Reliance .......... 13
VI. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*A White & Yellow Cab, Inc. v. Uber Techs., Inc.*,
2017 WL 1208384 (N.D. Cal. Mar. 31, 2017) .......... 13

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 6

*Angelilli v. Activision Blizzard, Inc., No. 23-CV-16566*,
2025 WL 524276 (N.D. Ill. Feb. 18, 2025) .......... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 5, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) .......... 10

*Disney Enters., Inc. v. Redbox Automated Retail, LLC*,
No. CV1708655DDPAGRX, 2018 WL 1942139 (C.D. Cal. Feb. 20, 2018) .......... 13

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000) .......... 6

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .......... 13

*HomeLight, Inc. v. Shkipin*,
694 F. Supp. 3d 1242 (N.D. Cal. 2023) .......... 11

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 8, 9

*Jasper v. Roblox Corp. et. Al.*,
Case No. BCV-24102789 (Cal. Super. Ct. Aug. 3, 2026) .......... 7

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 10

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) .......... 10

*Mendez v. Sony Computer Ent. Am., LLC*, 2021 WL 2459467 (D. Idaho June 16, 2021) ..........

*Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) .......... 11

*Morehouse v. Apple, Inc.*, No. 25-CV-02988-NW, 2025 WL 3525573 (N.D. Cal. Dec. 4, 2025) .......... 10, 11, 13

*Morehouse v. Apple, Inc.*, No. 25-CV-02988-NW, 2026 WL 2111332 (N.D. Cal. July 22, 2026) .......... 11

*Moroccanoil, Inc. v. Dermorganic Lab'ys, Inc.*, No. CV 09-4257 CBM (PAX), 2009 WL 10675634, at *6 (C.D. Cal. Nov. 9, 2009) .......... 13

*Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385 (9th Cir. 1987) .......... 6

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) .......... 6, 8, 11

*Patrick v. Running Warehouse, LLC*, 93 F.4th 468 (9th Cir. 2024) .......... 6, 8, 11

*Rent-A Ctr. W., Inc. v. Jackson*, 561 U.S. 63 (2010) .......... 8

*Saenz v. Roblox Corp. et al.*, Case No. 24-STCV21076 (Cal. Super. Ct. Aug. 12, 2026) .......... 7

*Slaviero v. Baby List, Inc.*, No. 25-CV-09496-RS, 2026 WL 1097746, at *4 (N.D. Cal. Apr. 22, 2026) .......... 8, 11

*Smith v. Spizzirri*, 601 U.S. 472 (2024) .......... 10

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) .......... 6, 13

*In re Tesla Advanced Driver Assistance Sys. Litig.*, No. 22-CV-05240-HSG, 2023 WL 6391477 (N.D. Cal. Sept. 30, 2023) .......... 7

*Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040 (9th Cir. 2025) .......... 6

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 11

*U.S. v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......... 6

**Statutes**

9 U.S.C. § 3 .......... 1, 6, 9
9 U.S.C. § 4 .......... 1
Cal. Bus. & Prof. Code § 17500 .......... 1
Cal. Bus. & Prof. Code § 17500.6 .......... 1, 12
The Contract Labour Regulation & Abalition Act.......... 11
FAL .......... 11, 13
Federal Arbitration Act .......... 5
Lanham Act.......... 11

**Other Authorities**

Fed. R. Civ. P. 12(b)(1).......... 10
Fed. R. Civ. P. 12(b)(6).......... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court should enforce the parties' arbitration agreement and stay proceedings because Plaintiffs agreed to individual binding arbitration of any claims relating to PlayStation products, including the video games at issue here. If, however, the Court were to address the merits of the dispute, the Court should dismiss the claims with prejudice.

## I. INTRODUCTION

Plaintiffs agreed to binding arbitration to resolve any dispute, claim, or controversy on an individual basis with Defendant Sony Interactive Entertainment LLC ("SIE" or "Defendant"), in the PlayStation Terms of Service ("PlayStation Terms").[1] Specifically, Plaintiffs agreed to arbitrate any dispute with SIE relating to the: (a) PlayStation Store; (b) PlayStation games and other digital products, features, or content made available by PlayStation; (c) PlayStation consoles or other devices; (d) PlayStation accounts; (e) any other PlayStation products; and (f) arbitrability, validity, enforceability, or scope of the arbitration agreements. The PlayStation Terms allow customers to opt out of the arbitration agreement within 30 days of accepting the PlayStation Terms and provide clear instructions for doing so. No plaintiff opted out of their arbitration agreements with SIE.

The allegations in the complaint are facially implausible and improperly brought before this Court. Plaintiffs allege that they were deceived into paying more for PlayStation digital video games than they would have paid had they known that the digital video games were licensed, rather than outright purchased, goods. As an initial matter, Plaintiffs cannot bring claims under Sections 17500 and 17500.6 of California's Business and Professions Code. It does not provide an independent, private right of action. Furthermore, Plaintiffs admit that they obtained nonexclusive licenses to digital video games, and they do not and cannot identify any harm resulting from the acquisition of those licenses. Plaintiffs therefore lack standing under federal and state law, nor can they plead an economic loss.

The Court should compel Plaintiffs to arbitrate their claims against SIE on an individual basis pursuant to 9 U.S.C. § 4 and stay the case pending arbitration. 9 U.S.C. § 3. In the alternative,

[1] Plaintiffs voluntarily dismissed Defendant Sony Corporation of America. Dkt. 15.

the court dismiss the case with prejudice.

## II. ISSUES TO BE DECIDED

1. Whether Plaintiffs and SIE entered an agreement to arbitrate.

2. Whether this dispute is covered by either of the parties' arbitration agreements.

## III. RELEVANT FACTS

Plaintiffs Andrew Garcia, Edward Heycock, Jason Mendoza, and John Salinas are California residents who allege they spent "hundreds of dollars on PlayStation digital goods over the past few years." Dkt. 1 ¶¶ 7-14. SIE is a California limited liability company responsible for the PlayStation brand in the United States, with its principal place of business in San Mateo, California. Dkt. 1 ¶ 17.

Plaintiffs allege that they did not know they would not "obtain ownership" of the games they obtained because of the "Buy Now" and "Confirm Purchase" words in the PlayStation Store. Dkt. 1 ¶¶ 2–4, 65–69. Plaintiffs do not allege that they have lost access to any game they bought.

### A. PlayStation Store and Terms of Service

To obtain PlayStation games, a user must set up a PlayStation Account, which requires agreeing to PlayStation's Terms of Service ("PlayStation Terms"). Plaintiffs set up PlayStation accounts and paid for PlayStation games through the PlayStation Store. Dkt. 1 ¶¶ 1, 7-14, 20, 21, Plaintiffs admit the PlayStation Terms "govern the licensing terms for digital games and other digital content acquired through the PlayStation Store." Dkt. 1 ¶ 22. Plaintiffs admit that the PlayStation Terms disclosure "is incorporated into the 'Confirm Purchase' button," so their agreement was required. Dkt. 1 ¶ 67.

During account creation, SIE presents users with "Important Legal Documents," that shows four large buttons that link to legal agreements, including one for the PlayStation Terms, in white font against a dark background. Horne Decl ¶ 8. To sign up for a PlayStation account, a user must agree to the PlayStation Terms by clicking a box labelled "I Agree" shown on the "Important Legal Documents" screen. Horne Decl ¶ 9. When the user selects the checkbox displayed on-screen, the following text appears: "By selecting [I Agree], you confirm that you understand and accept the terms of service and the user agreement on your behalf and on behalf of your child, and that the

information you've provided is accurate." Horne Decl ¶ 9. During the checkout phase for purchasing a PlayStation game, the PlayStation Store on the web states, above the "Confirm Purchase" button: "By selecting [Confirm Purchase], you agree to complete the purchase in accordance with the PlayStation Terms of Service before using this content. You further acknowledge that your purchase of this digital product amounts to a license subject to the Software Product License Agreement." Horne Decl. ¶ 21.

The PlayStation Terms are updated periodically. Horne Decl. ¶ 11. For certain updates, a user must again consent to and accept the PlayStation Terms for them to maintain their access to PlayStation services. Failure to do so results in the user losing their access to PlayStation services unless and until the user accepts the updated PlayStation Terms. Horne Decl. ¶ 12. Plaintiffs each accepted the most recent version of the PlayStation Terms on April 22 or April 23, 2024 by clicking a box labelled "I Agree" shown on the "Changes To Our Important Legal Documents" screen. Horne Decl. ¶¶ 29, 34, 39, 44.

The PlayStation Terms include a binding arbitration agreement and a class action waiver in Section 14. Horne Decl. ¶¶ 17-18; *id*. Ex. A. *See also id*. Exs. B & C. Users are also instructed in Section 1 to "carefully read the binding arbitration clause and class action waiver," and the PlayStation Terms caution that "it affects how disputes are resolved between" users and SIE. Horne Decl. ¶ 17; *id*. Ex. A. The "Binding Individual Arbitration" agreement within the PlayStation Terms applies to:

> [A]ny dispute, claim, or controversy between you and Sony Interactive Entertainment LLC, or any of its current or former affiliates, including parents or subsidiaries, and any predecessor or successor entity to any of the foregoing, (collectively, "Sony Entities") regarding PlayStation Services or PlayStation Content, or the use of any PlayStation Devices or other devices sold by a Sony Entity to access PlayStation Content, whether based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory, and includes the validity, enforceability or scope of this "BINDING INDIVIDUAL ARBITRATION" section

(with the exception of the enforceability of the Class Action Waiver clause below).

Horne Decl. ¶ 17; *id*. Ex. A. Within the Binding Individual Arbitration agreement, the word "'Dispute' is to be given the broadest possible meaning that will be enforced." *Id.* The PlayStation Terms delegate to the arbitrator any "dispute" regarding "the validity, enforceability or scope of this 'Binding Individual Arbitration' section." *Id.*

The PlayStation Terms provide consumers with an opportunity to opt-out of arbitration:

> YOU HAVE THE RIGHT TO OPT OUT OF BINDING ARBITRATION AND CLASS ACTION WAIVER WITHIN 30 DAYS. IF YOU DO NOT WISH TO BE BOUND BY THE BINDING ARBITRATION AND CLASS ACTION WAIVER IN THIS SECTION, YOU MUST NOTIFY US IN WRITING WITHIN 30 DAYS OF THE DATE THAT YOU ACCEPT THIS AGREEMENT UNLESS A LONGER PERIOD IS REQUIRED BY APPLICABLE LAW.

Plaintiffs, additionally, agreed to waive the right to resolve their claims as a class. Horne Decl. ¶ 17; *id*. Ex. A. Specifically, the PlayStation Terms provide:

> YOU AND THE SONY ENTITY WITH WHICH YOU HAVE A DISPUTE AGREE THAT ARBITRATION WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A NAMED OR UNNAMED MEMBER IN A CLASS OR REPRESENTATIVE ACTION, UNLESS BOTH YOU AND THE SONY ENTITY WITH WHICH YOU HAVE A DISPUTE SPECIFICALLY AGREE TO DO SO IN WRITING FOLLOWING INITIATION OF THE ARBITRATION.

Horne Decl. ¶ 17; *id*. Ex. A. There are no penalties for opting out of the class-action waiver or arbitration agreement. Horne Decl. ¶ 18.

Section 8.4 of the PlayStation Terms explains that "When you order or purchase a product from PlayStation Store, you buy a personal license to use that product for private, non-commercial use. That license is not transferable unless your local applicable laws say it must be. **This means you can use a product in the ways described in the license, but do not own the product**." Horne Decl. ¶ 17; *id*. Ex. A. The Terms further explain in Section 10.1 that "Use of the terms 'own,'

'**ownership**', '**purchase**,' 'sale,' 'sold,' 'sell,' 'rent' or '**buy'** in this Agreement or in connection with the Content **does not mean or imply any transfer of ownership** of any content, data or software or any intellectual property rights from SIE, its affiliates, or its licensors to any user or third party." Horne Decl. ¶ 17; *id*. Ex. A. Section 10.2 of the PlayStation Terms states that **the license is "revocable."** Horne Decl. ¶ 17; *id*. Ex. A.

The PlayStation Terms have contained a Binding Individual Arbitration agreement therein, class action waiver, and opt-out provision since Plaintiffs' first alleged purchase of PlayStation games in this action. Horne Decl. ¶ 18; Dkt. 1 ¶ 8. No Plaintiff opted out of the individual arbitration agreement in the PlayStation Terms. Horne Decl. ¶¶ 30, 35, 40, 45.

### B. The Software Product Licensing Agreement ("SPLA")

Plaintiffs admit the at-issue software licenses are governed by the SPLA. Dkt. 1 ¶¶ 3, 33, 56, 58, 62. Plaintiffs also admit the SPLA was disclosed to them, and for which their agreement was required, before they obtained the games described in the Complaint, "[a]bove the 'Confirm Purchase' button." Dkt. 1 ¶ 62.

To buy a PlayStation game, a user must agree to the SPLA. Specifically, during the checkout phase for purchasing a PlayStation game, the PlayStation Store web store states, above the "Confirm Purchase" button: "By selecting [Confirm Purchase], you agree to complete the purchase in accordance with the PlayStation Terms of Service before using this content. You further acknowledge that your purchase of this digital product amounts to a license subject to the Software Product License Agreement." Horne Decl. ¶ 21. Within this text, the PlayStation Terms and the SPLA are in blue hyperlinked font, which contrasts with the surrounding black font, allowing the user to click on them to review the PlayStation Terms and the SPLA. Horne Decl. ¶ 21.

Section 1 of the SPLA explains that "**The Software is licensed to you, not sold**." Dkt. 1 ¶ 56; Horne Decl. ¶ 25 & *id*. Ex. D. The SPLA remained in place through the period of Plaintiffs' alleged purchases. Horne Decl. ¶ 25; Dkt. 1 ¶¶ 8, 10, 12, 14.

## IV. <u>LEGAL STANDARD</u>

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration."

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA "requires courts to compel arbitration of claims covered by an enforceable arbitration agreement." *Oberstein v. Live Nation Ent., Inc*., 60 F.4th 505, 509–10 (9th Cir. 2023); 9 U.S.C. § 3. The party seeking to avoid arbitration bears the burden of proving that the claims are unsuitable for arbitration. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

Courts routinely compel arbitration where parties have agreed to arbitrate disputes in linked terms and conditions shown immediately above or below a purchase button that a plaintiff clicked. *See, e.g., Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024); *Oberstein*, 60 F.4th at 515-517. The Supreme Court has repeatedly enforced class-action waivers, requiring individual arbitration. *See, e.g.*, *Am. Exp. Co. v. Italian Colors Rest*., 570 U.S. 228, 236 (2013) ("The class-action waiver merely limits arbitration to the two contracting parties."); *AT&T Mobility*, 563 U.S. at 352.

To survive a 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Although factual allegations are construed in the light most favorable to the nonmoving party, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

Because a plaintiff can "plead himself out of a claim by including unnecessary details contrary to his claims," the court should not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Id*. The court also need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Id*. Documents incorporated by reference and facts subject to judicial notice may also be considered on a motion to dismiss, without converting the motion into a motion for summary judgment. *See Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1053 n.2 (9th Cir. 2025)*; Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987); *see also U.S. v. Ritchie*,

342 F.3d 903, 908 (9th Cir. 2003).[2]

## V. THE CASE SHOULD BE COMPELLED TO ARBITRATION AND STAYED PENDING ARBITRATION, OR ALTERNATIVELY DISMISSED WITH PREJUDICE

### A. The Court Should Compel Arbitration

"When a party moves to compel arbitration, the court must determine (1) whether a valid arbitration agreement exists and (2) whether the agreement encompasses the dispute at issue." *In re Tesla Advanced Driver Assistance Sys. Litig.*, No. 22-CV-05240-HSG, 2023 WL 6391477, at *3 (N.D. Cal. Sept. 30, 2023). Plaintiffs entered into valid individual arbitration agreements, which encompass the dispute. Several recent state and federal court decisions have reviewed and enforced the arbitration provisions in SIE's PlayStation Terms.[3]

#### 1. Plaintiffs Agreed to Individual Binding Arbitration

To determine whether the parties agreed to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *In re Tesla Advanced Driver Assistance Sys. Litig.*, No. 22-CV-05240-HSG, 2023 WL 6391477, at *4 (N.D. Cal. Sept. 30, 2023). In California, this requires "mutual assent," "determined under an objective standard applied to the outward manifestations or expressions of the parties, *i.e.*, the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Id.* at *4.

Here, Plaintiffs assented to the PlayStation Terms when they set up accounts and when they when the PlayStation Terms were updated in April 2026 and users were required to accept the updated PlayStation Terms by clicking the on-screen box labelled "I Agree" and subsequently clicking the on-screen "Confirm" button on the Changes To Our Important Legal Documents screen in order to maintain their PlayStation access. Horne Decl. ¶¶ 7-17, 29, 34, 39, 44.

The Ninth Circuit has repeatedly held that where, as here, a reasonable user would have

---

[2] The Complaint states that the PlayStation Terms of Service and the Software Product License Agreement "govern the licensing terms for digital games and other digital content acquired through the PlayStation Store," thus incorporating the agreements by reference. Dkt. 1 ¶¶ 22, 39, 56; *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005).

[3] *See Angelilli v. Activision Blizzard, Inc., No. 23-CV-16566,* 2025 WL 524276, at *16-17 (N.D. Ill. Feb. 18, 2025); *Saenz v. Roblox Corp. et al.*, Case No. 24-STCV21076 (Cal. Super. Ct. Aug. 12, 2026); *Jasper v. Roblox Corp. et al.*, Case No. BCV-24102789 (Cal. Super. Ct. Aug. 3, 2026).

seen the terms of service above or directly below the action button, the user unambiguously manifested assent to the terms of service, including the arbitration provision, and the terms and arbitration provision were valid and binding. *Patrick*, 93 F.4th at 477; *Oberstein*, 60 F.4th at 515-517.

District courts are in accord. For example, in *Slaviero v. Baby List, Inc.*, the defendant's website had a line of text in grey font that was smaller than the surrounding font that stated "By clicking Sign Up you agree to the Babylist Terms of Use and Privacy Policy." No. 25-CV-09496-RS, 2026 WL 1097746, at *4 (N.D. Cal. Apr. 22, 2026). Baby List's hyperlinks were in black. *Slaviero*, 2026 WL 1097746, at *4. The text was separated from the "Sign Up" button by another line of text. *Slaviero*, 2026 WL 1097746, at *4. The court held the notice of the terms—in which the arbitration agreement was embedded—as in *Patrick* and *Oberstein*, to be sufficiently close enough to capture a reasonable user's gaze to demonstrate objective assent to the terms. *Slaviero*, 2026 WL 1097746, at *4.

Plaintiffs expressly reference the PlayStation Terms and the SPLA in the Complaint and admit they "govern the licensing terms for digital games and other digital content acquired through the PlayStation Store." Dkt. 1 ¶¶ 22; 39. Plaintiffs further admit they have each been PlayStation customers for "years." Dkt. 1 ¶¶ 7, 9, 11, 13. Thus the "the context of this transaction, requiring a full registration process, reflected the contemplation of some sort of continuing relationship that would have put users on notice for a link to the terms of that continuing relationship." *Keebaugh*, 100 F.4th at 1019. Thus, there can be no dispute that Plaintiffs agreed to individual arbitration.

**2. <u>Issues of Arbitrability and Scope Are Delegated to the Arbitrator</u>**

The parties clearly and unmistakably delegated the arbitrability of Plaintiffs' claims to arbitration. Parties may "arbitrate 'gateway' questions of 'arbitrability,'" including "whether the parties have agreed to arbitrate or whether agreement covers a particular controversy." *Rent-A Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).

Here, the PlayStation Terms expressly delegate to the arbitrator "the validity, enforceability or scope of this 'BINDING INDIVIDUAL ARBITRATION' section (with the exception of the Class Action Waiver clause)." Horne Decl. ¶ 17, *id*. Ex. A. *See also id*. Exs. B, C. Courts have

held that this provision in the PlayStation Terms is a clear and unmistakable delegation. *Mendez v. Sony Computer Ent. Am., LLC*, 2021 WL 2459467, at *4 (D. Idaho June 16, 2021) (finding that the PlayStation Terms, the same one at issue here, contain a "valid delegation provision by 'clearly and unmistakably' delegating the arbitrability determination to the arbitrator."). Thus, the PlayStation Terms clearly delegate questions concerning the "validity, enforceability or scope" of the arbitration agreement to the arbitrator. The Court need not resolve them, as whether this dispute is covered by the arbitration agreements is for the arbitrator to decide.

By accepting the PlayStation Terms and maintaining PlayStation accounts, Plaintiffs agreed to arbitrate any disputes with SIE regarding PlayStation, the PlayStation Store, PlayStation games, or any PlayStation device. Horne Decl. ¶ 17, *id*. Ex. A. *See also id*. Exs. B, C. And the word "Dispute" is to be given the "broadest possible meaning that will be enforced." Horne Decl. ¶ 17, *id*. Ex. A. *See also id*. Exs. B, C. This Dispute is covered by the arbitration agreement in the PlayStation Terms, though this is for the Arbitrator, rather than the Court, to decide.

#### 3. <u>The Arbitration Agreement and Class-Action Waiver Are Valid and Enforceable</u>

The Court need not analyze the validity and enforceability of the arbitration agreement and the class action waiver. However, if it chooses to do so, it should hold that the agreement and waiver are enforceable. Plaintiffs cannot establish that the agreement is unconscionable nor can they establish that the class action waiver is invalid. The Ninth Circuit has held, "arbitration agreements can generally waive collective, class-wide, and representative claims." *Keebaugh v. Warner Bros. Ent. Inc.,* 100 F.4th 1005, 1019 (9th Cir. 2024). Plaintiffs' class waiver is enforceable here, though the Court need not reach this issue.

### B. The Court Should Stay the Case While Arbitration Proceeds

When a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until [the] arbitration" has concluded. 9 U.S.C. § 3. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). SIE requests that the Court stay these proceedings pending the completion of arbitration.

### C. In the Alternative, the Court Should Dismiss the Case with Prejudice

Although the Court need not address the sufficiency of Plaintiffs' allegations, the merits of the underlying claims are also facially implausible and should be dismissed with prejudice.

#### 1. <u>Plaintiffs Lack Standing</u>

To demonstrate Article III standing, a plaintiff must show an injury, trace that injury to the defendant's conduct, and prove that courts can provide adequate redress for the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-6 (1992); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (dismissal under 12(b)(1) is appropriate when plaintiffs have not established standing).

Here, Plaintiffs fail to plausibly allege any harm. Plaintiffs do not allege that they lost "continuous access" to any product, or that any of their games were revoked or stopped working. Dkt. 1 ¶ 112. Plaintiffs are, by their own allegations, very satisfied customers, who have "spent hundreds of dollars" on PlayStation digital goods over the past few years, repeatedly buying video games. Dkt. 1 ¶¶ 7-14. These allegations are insufficient to establish any injury, and thus standing, to assert their claims. *Morehouse v. Apple, Inc.*, No. 25-CV-02988-NW, 2025 WL 3525573, at *2 (N.D. Cal. Dec. 4, 2025) ("*Morehouse I*").

In *Morehouse I*, the plaintiffs asserted that they "would not have purchased items from Defendant at the price they paid for them had they known that what they were purchasing was actually a revocable license subject to Defendant's licensing agreements." *Morehouse*, 2025 WL 3525573, at *2. The court dismissed because the plaintiffs had not "alleged any facts supporting their theory that they paid a price premium for their e-books and audiobooks," and had not shown that "the products they purchased were offered for higher prices than other comparable products" as a result of the alleged misrepresentations. *Morehouse I*, 2025 WL 3525573, at *2.

Here, as in *Morehouse*, Plaintiffs have not alleged any facts supporting their theory that they paid a premium for their video games. Nor do they allege anything about comparable products. "A plaintiff, however, must do more than allege that she did not receive the benefit she thought she was obtaining." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020).

Plaintiffs also lack standing to seek injunctive relief because they have not plausibly alleged "a risk of future harm" that is "sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*,

594 U.S. 413, 435 (2021). Plaintiffs have not alleged that they will lose access to the video games they obtained, nor that they "will be harmed by paying a price premium in the future because they have not alleged facts showing price comparisons." *Morehouse I*, 2025 WL 3525573, at *2. The complaint should be dismissed for lack of standing.

**2. Plaintiffs Fail to Plausibly Allege Any Injury**

Plaintiffs' claims fail to allege economic loss—as required under the CLRA and the FAL—for the same reason. Plaintiffs have not alleged that they will lose access to the PlayStation games imminently, and they also have not alleged an actual defect in any of the games they obtained and have therefore failed to demonstrate any economic injury. *Morehouse v. Apple, Inc.*, No. 25-CV-02988-NW, 2026 WL 2111332, at *2 (N.D. Cal. July 22, 2026) ("*Morehouse II*") (potential risk of loss of access to digital product is not a concrete or particularized injury to plaintiffs)

**3. Reasonable Consumers Would Not Be Misled**

Claims "based on deceptive or misleading marketing must demonstrate that a reasonable consumer is likely to be misled by the representation." *Moore v. Trader Joe's Co*., 4 F.4th 874, 881 (9th Cir. 2021). To meet this standard, Plaintiffs must demonstrate "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Moore*, 4 F.4th at 882.

Here, Plaintiffs admit that before customers confirm any purchase, the PlayStation Terms and the SPLA are disclosed and assented to, including licensing details, so that a reasonable user would have seen and reviewed them before acknowledging them and completing the transaction. Dkt. 1 ¶ 62. *See* Horne Decl. ¶¶ 19-25, 32, 37, 42, 47. This is sufficient in the Ninth Circuit to show Plaintiffs' unambiguous assent to those terms. *Patrick*, 93 F.4th at 477; *Oberstein*, 60 F.4th at 515-517; *Slaviero*, 2026 WL 1097746, at *4. Terms that are near the action button like "Confirm Purchase" and are in a different color font, are held to have been clearly and conspicuously disclosed. *Patrick*, 93 F.4th at 477; *Oberstein*, 60 F.4th at 515-517; *Slaviero*, 2026 WL 1097746, at *4. *See also HomeLight, Inc. v. Shkipin*, 694 F. Supp. 3d 1242, 1255 (N.D. Cal. 2023) (dismissing Lanham Act claim alleging that "100% free, with no catch" was false because company's referral fee structure was disclosed on its website). The PlayStation Terms and SPLA

were thus clearly and conspicuously disclosed, assented to, and acknowledged, within the meaning of Cal. Bus. & Prof. Code § 17500.6.

Section 8.4 of the PlayStation Terms explains that "When you order or purchase a product from PlayStation Store, you buy a personal license to use that product for private, non-commercial use. That license is not transferable unless your local applicable laws say it must be. **This means you can use a product in the ways described in the license, but do not own the product**." Horne Decl. ¶ 17, *id*. Ex. A. *See also id*. Exs. B, C. The Terms further explain in Section 10.1 that "Use of the terms 'own,' '**ownership'**, '**purchase**,' 'sale,' 'sold,' 'sell,' 'rent' or '**buy'** in this Agreement or in connection with the Content **does not mean or imply any transfer of ownership** of any content, data or software or any intellectual property rights from SIE, its affiliates, or its licensors to any user or third party." Horne Decl. ¶ 17, *id*. Ex. A. *See also id*. Exs. B, C.

As Plaintiffs admit, Section 1 of the SPLA likewise explains that "The **Software is licensed to you, not sold**." Dkt. 1 ¶ 56; Horne Decl. ¶ 25 & *id*. Ex. D. This makes sense. In the digital age, it is not plausible to allege that reasonable consumers believed they were obtaining "ownership" of a digital game. Were that the case, then Plaintiff Edward Heycock would not have been able to obtain the game Resident Evil Requiem on February 25, 2026 for $69.99 from the PlayStation Store after Plaintiff Jason Mendoza had obtained Resident Evil Requiem on February 14, 2026, because Mr. Mendoza, not Sony, would have owned it then. *See* Dkt. 1 ¶¶ 10, 12. Moreover, digital video games are played against other players, who themselves must have a copy of the game in order to play. It is not plausible that reasonable consumers would believe that once they obtained a digital video game, they would be the exclusive owner of that game. And the PlayStation Terms (in Section 10.2) state that **the license is "revocable."** Horne Decl. ¶¶ 17 & *id*. Ex. A.

Accordingly, reasonable consumers would not be misled into believing that obtaining licenses to PlayStation video games conveyed "ownership," so Plaintiffs' claims fail.

### 4. <u>Plaintiffs Fail to Plausibly Allege Materiality or an Actionable Omission</u>

Plaintiffs likewise fail to plausibly allege that **any** SIE statement is material, in that "it is likely to influence the purchasing decision." *Moroccanoil, Inc. v. Dermorganic Lab'ys, Inc.*, No. CV 09-4257 CBM (PAX), 2009 WL 10675634, at *6 (C.D. Cal. Nov. 9, 2009). Plaintiffs allege,

without any factual support, that failing to disclose that the software is licensed, rather than owned, "is material because the risk that access may be revoked contradicts reasonable consumer expectations associated with a 'purchase,' which implies continuous access to the product." Dkt. 1 ¶ 112. But the Court should not accept this conclusory statement as true because it is "contradicted by documents referred to in the complaint," *Sprewell*, 266 F.3d at 988, namely the SPLA and the PlayStation Terms, which expressly state that the software is licensed, not sold, and the licenses are revocable. And to the extent that Plaintiffs contend SIE failed to disclose that they were only obtaining a license, Plaintiffs' claim fails because whether they obtained a license is not central to the functionality of PlayStation video games. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018). Having failed to plausibly allege materiality or an actionable omission, the claims should be dismissed.

### 5. <u>Plaintiffs Failed to Plausibly Plead Reliance</u>

Similar to Article III standing, "a plaintiff is required to show 'a causal connection or reliance' on an affirmative misrepresentation or a material omission." *Morehouse*, 2025 WL 3525573, at *2. Plaintiffs do not plausibly plead that they relied on any statement about "ownership" in making their purchasing decisions. *Disney Enters., Inc. v. Redbox Automated Retail, LLC*, No. CV1708655DDPAGRX, 2018 WL 1942139, at *10 (C.D. Cal. Feb. 20, 2018) (plaintiff lacked standing to assert FAL claim because it failed to show it actually relied on defendant's advertising); *A White & Yellow Cab, Inc. v. Uber Techs., Inc.*, 2017 WL 1208384, at *8-9 (N.D. Cal. Mar. 31, 2017) (dismissing taxi cab company's FAL claim because it failed to "allege facts to show that it relied to its detriment" on advertising).

Plaintiffs offer no factual allegations that they relied to their detriment on any allegedly false or misleading statement by SIE. Plaintiffs allege, in conclusory fashion, that they "did not learn that they were receiving only a limited, revocable license until after completing their purchase and reviewing Defendants' license agreements, if at all. They relied on Defendants' misleading representations to their detriment." Dkt. 1 ¶ 127. But Plaintiffs admit that the SPLA was disclosed to them, and for which their agreement was required, before they obtained the games described in the Complaint, "[a]bove the 'Confirm Purchase' button." Dkt. 1 ¶ 62. Thus the conclusory reliance

allegation is not plausible on its face.

## VI. CONCLUSION

For the foregoing reasons, the Court should compel arbitration and stay the case. In the alternative, the Court should dismiss the case with prejudice.

Respectfully submitted,

Dated: August 21, 2026

*/s/ Robert S. Shwarts*

Robert S. Shwarts (CA SBN 196803)
rshwarts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone: (415) 619-3418
Facsimile: (415) 619-3505

Angela Colt (CA SBN 286275)
acolt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W 52nd St
New York, NY 10019
Telephone: +1 212 506 5000

*Attorneys for Defendant*
Sony Interactive Entertainment LLC