PAK HEINZ PLLC
Noah Heinz (Bar No. 368281)
Noah.Heinz@pakheinz.com
Albert Pak (Bar No. 361123)
Albert.Pak@pakheinz.com
20 F St. NW, 7th Floor
Washington, D.C. 20001
Telephone: (202) 505-6354

*Attorneys for Plaintiffs and all those similarly situated*

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| Andrew Garcia, Edward Heycock, Jason Mendoza, and John Salinas, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Sony Interactive Entertainment, LLC<br><br>Defendant. | Case No. 3:26-cv-6016-VC<br><br>PLAINTIFFS' RESPONSE IN OPPOSITION TO SONY INTERACTIVE ENTERTAINMENT LLC'S MOTION TO COMPEL ARBITRATION OR TO DISMISS<br><br>Hearing date: October 1, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria<br>Courtroom: 3 – 17 Fl. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
INTRODUCTION ........ 1
BACKGROUND ........ 1
A. California Enacts AB 2426 Addressing Digital Goods. ........ 1
B. Sony Violates That Law, Harming Plaintiffs. ........ 2
ARGUMENT ........ 3
I. Plaintiffs Have Standing, But If They Lack It, The Court Should Dismiss Without Prejudice, And Without Reaching Any Other Issue. ........ 3
II. The Arbitration Clause Is Not Enforceable. ........ 5
A. The 2026 Terms Are Procedurally Unconscionable. ........ 6
1. The 2026 Terms are a contract of adhesion. ........ 6
2. The 2026 Terms are oppressive and surprising. ........ 6
B. The 2026 Terms Are Substantively Unconscionable. ........ 8
1. Section 14.7's one-sided conference condition is unconscionable. ........ 8
2. Section 15's loser-pays provision is unconscionable. ........ 8
3. Section 17.1's liability and damages waiver is unconscionable. ........ 9
4. The arbitration clause is illusory and retroactive. ........ 9
5. The batching protocol is unconscionable because it is non-mutual and burdens the right to counsel of choice. ........ 11
6. Unconscionability taints the delegation clause. ........ 11
C. The Infirm Provisions Are Not Severable. ........ 13
D. The Public Injunctive Relief Claim Cannot Be Arbitrated. ........ 13
III. The Complaint States A Claim Because Sony Violated AB 2426. ........ 14
A. Sony Violated AB 2426. ........ 14
B. Sony's Counterarguments Are Unpersuasive. ........ 15
CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andino v. Apple, Inc.*,
No. 2:20-cv-01628, 2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ..................... 5

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) .................................................................... 6, 13

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023)......................................................... 12

*Cooper v. Ramos*,
704 F.3d 772 (9th Cir. 2012)........................................................... 3

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015)......................................................... 15

*Davidson v. Kimberly-Clark Corp.*,
889 F.*3d* 956 (9th Cir. 2018)........................................................... 5

*Ex parte McCardle*,
74 U.S. (7 Wall.) 506 (1869)............................................................ 3

*Flores v. Transam. HomeFirst, Inc.*,
93 Cal. App. 4th 846 (2001).............................................................. 7

*Gostev v. Skillz Platform, Inc.*,
88 Cal. App. 5th 1035 (2023)............................................................ 9

*Graham v. Scissor-Tail, Inc.*,
28 Cal. 3d 807 (1981)........................................................................ 6

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024)...................................................... 6, 12, 13

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013), *as amended* (July 8, 2013) ........................... 4, 15

*In re Amazon Prime Video Litig.*,
No. 2:22-cv-00401, 2024 WL 1138906 (W.D. Wash. Mar. 15, 2024) .......... 5

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .......... 15

*Int'l Union of Operating Eng'rs v. Cnty. of Plumas*,
559 F.3d 1041 (9th Cir. 2009) .......... 3

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 14

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) .......... 3, 4, 5

*Lhotka v. Geographic Expeditions, Inc.*,
181 Cal. App. 4th 816 (2010) .......... 9, 13

*Lim v. TForce Logistics, LLC*,
8 F.4th 992 (9th Cir. 2021) .......... 8, 12

*MacClelland v. Cellco P'ship*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022) .......... 11

*Martinez v. Master Prot. Corp.*,
118 Cal. App. 4th 107 (2004) .......... 13

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) .......... 5

*Missouri ex rel. Koster v. Harris*,
847 F.3d 646 (9th Cir. 2017) .......... 3

*Morehouse v. Apple, Inc.*,
No. 25-cv-02988, 2025 WL 3525573 (N.D. Cal. Dec. 4, 2025) .......... 4

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) .......... 7, 8

*Nelson v. Dual Diagnosis Treatment Ctr., Inc.*,
77 Cal. App. 5th 643 (2022) .......... 9

*OTO, L.L.C. v. Kho*,
8 Cal. 5th 111 (2019) ........ 6

*OTO, L.L.C. v. Kho*,
14 Cal. App. 5th 691 (2017) ........ 6

*Patterson v. ITT Cons. Fin. Corp.*,
14 Cal. App. 4th 1659 (1993) ........ 7

*Peleg v. Neiman Marcus Grp., Inc.*,
204 Cal. App. 4th 1425 (2012) ........ 10

*Peng v. First Republic Bank*,
219 Cal. App. 4th 1462 (2013) ........ 10

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
20 Cal. 4th 1135 (1999) ........ 11

*Ramirez v. Charter Commc'ns, Inc.*,
16 Cal. 5th 478 (2024) ........ 9

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........ 3

*Szetela v. Discover Bank*,
97 Cal. App. 4th 1094 (2002) ........ 7

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ........ 15

**Statutes**

Assembly Bill 2426 ........ 1, 2, 14, 15

Cal. Bus. & Prof. Code § 17500.6(a)(1) ........ 2, 15

Cal. Bus. & Prof. Code § 17500.6(b)(1) ........ 2

Cal. Bus. & Prof. Code § 17500.6(b)(2) ........ 2

Cal. Civ. Code § 1670.5 ........ 13

Cal. Civ. Code § 1751 ........ 8

Cal. Civ. Code § 1780(e) .......... 8

Cal. Civ. Proc. Code § 1284.3 .......... 9

**Other Authorities**

AAA, Consumer Arbitration Rules .......... 8, 11

AAA, Consumer Due Process Protocol .......... 10, 11

Press Release (Sept. 16, 2024) https://irwin.asmdc.org/press-releases/20240916-assemblymember-irwin-urges-governor-sign-legislation-increasing .......... 1

## INTRODUCTION

The California Legislature enacted a law to protect consumers from exactly the conduct Sony Interactive Entertainment, LLC is doing: offering digital games using words like "buy" and "purchase" to stir demand, and hiding a unilateral right to revoke access to the games in a fine-print licensing agreement. Sony makes no effort to explain how it complies with the law. Rather, it challenges standing, moves to compel arbitration, and injects its own fine-print agreements as defenses to the claim. No challenge succeeds. There is standing here because Plaintiffs purchased the games based on Sony's misrepresentations and would not have done so otherwise at the same price. The arbitration clause Sony invokes is not enforceable because it is unconscionably one-sided in Sony's favor, which is why no arbitration has been conducted under it at the AAA for at least five years. On the merits, the Complaint states a claim because Sony violated California law. The Motion should be denied.

## BACKGROUND

### A. California Enacts AB 2426 Addressing Digital Goods.

Assembly Bill 2426 requires digital goods sellers to disclose when a purchase conveys only a revocable license. The Bill's sponsor, Assemblymember Jacqui Irwin, explained that "Consumers around the world deserve to understand that when they spend money on digital movies, music, books, and games, those so-called 'purchases' can disappear without notice." Press Release (Sept. 16, 2024) https://irwin.asmdc.org/press-releases/20240916-assemblymember-irwin-urges-governor-sign-legislation-increasing. AB 2426 was in response to "numerous instances of digital media sellers revoking or threatening to revoke consumer access," including "Sony's PlayStation Store permanently revok[ing] access to hundreds of purchased movies." *Id.*

AB 2426 makes it "unlawful for a seller of a digital good to advertise or offer for sale a digital good to a purchaser with the terms 'buy,' 'purchase,' or any other term which a reasonable person would understand to confer an unrestricted ownership interest in the digital good" unless it discloses that fact in one of two prescribed ways. Cal. Bus.

& Prof. Code § 17500.6(b)(1). The first way is to require "affirmative acknowledgment" from the purchaser indicating that he "is receiving a license," a "complete list of restrictions and conditions," and that access "may be unilaterally revoked." *Id.* § 17500.6(b)(1)(A). The second way is by posting "before executing each transaction a clear and conspicuous statement" that "[s]tates in plain language that 'buying' or 'purchasing' the digital good is a license" and includes a link to the terms. *Id.* § 17500.6(b)(1)(B). "Clear and conspicuous" is defined as "clearly calls attention … such as in a larger type … or in contrasting type, font, or color …." *Id.* § 17500.6(a)(1). *Either* method of compliance must "be distinct and separate from any other terms and conditions of the transaction." *Id.* § 17500.6(b)(2). The point of this law is that consumers reasonably understand "buy," "purchase," and similar terms to convey ownership-like rights, rather than a unilaterally revocable license.

### B. Sony Violates That Law, Harming Plaintiffs.

Sony did not comply. It used the words "Buy Now," "Purchase," and "Confirm Purchase," Compl. ¶¶ 2, 21, 101, but did not employ either of the prescribed disclosures. Rather than an affirmative acknowledgment, there is only one button a consumer must press: "Confirm Purchase," which, in fine print, commits the purchaser to Sony's Terms. Compl. ¶¶ 65-69, 108. This is not an affirmative acknowledgment and independently is not "distinct and separate from any other terms and conditions of the transaction." Sony also did not include a "clear and conspicuous" disclosure. Compl. ¶¶ 60-64. Rather, it linked its terms "in inconspicuous text." Compl. ¶ 60. The link was not "distinct and separate from any other terms and conditions of the transaction," but was wrapped into the purchase. This is the abusive practice targeted by AB 2426, and Plaintiffs are the type of consumers that were meant to be protected. Plaintiffs purchased PlayStation games without understanding that Sony could unilaterally revoke access. They believed they owned the games because they bought them.

## ARGUMENT

### I. Plaintiffs Have Standing, But If They Lack It, The Court Should Dismiss Without Prejudice, And Without Reaching Any Other Issue.

Federal courts must begin with subject matter jurisdiction. If Plaintiffs lack standing, the "only function remaining to the court is that of announcing the fact and dismissing the cause," without addressing the merits or the motion to compel. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)); *see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas*, 559 F.3d 1041, 1044 (9th Cir. 2009) (vacating an order compelling arbitration because the district court lacked subject matter jurisdiction). Contrary to Sony's argument, "dismissal for lack of subject matter jurisdiction is without prejudice," not with prejudice, since "'the merits have not been considered' before dismissal." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012)). If dismissed, Plaintiffs may refile in state court.

Here, there is standing. Because Sony hinges its constitutional and statutory standing arguments on the "same reason," Mot. at 11, the best authorities are those addressing representations about products, chiefly the California Supreme Court's precedent *Kwikset Corp. v. Superior Ct.*, which set forth the requirements for standing. 51 Cal. 4th 310 (2011). That case addressed "federal standing," *id.* at 322-23, and statutory standing, *id.* at 323-27, explaining that the statutory standard is *higher*, but was met. *Kwikset* applied a practical test, hinging injury on what matters to consumers, explaining that "processes and places of origin matter." *Id.* at 328. Under this rationale, the place a product was made, whether a "diamond is conflict free," and whether something was made with "union workers" all can matter. *Id.* at 328-29. At issue in *Kwikset* was a product labeled "Made in U.S.A." which in fact had some components that were foreign-made. *Id.* at 317. The Court reasoned as follows:

> A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging, as plaintiffs have here, that he or she would

> not have bought the product but for the misrepresentation.… [B]ecause of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, *i.e.*, that the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue.

*Id.* at 330.

The Ninth Circuit quoted this section and applied *Kwikset* in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), *as amended* (July 8, 2013). It rejected attempts to cabin *Kwikset*, noting there is "no requirement … [to] plead how much he would have paid," and that the case applied beyond "misrepresentations concerning a product's origin or composition," noting that its examples were not "exhaustive" but "illustrative." *Id.* at 1105. It gave examples too, such as "'not available in stores,' 'available for a limited time only,'" and others. *Id.* at 1106. All of these are *practically* important to consumers. It rejected the argument that consumers still get the "benefit of the bargain" if they keep their purchases—rather, such a defense applies "only if the misrepresentation that the consumer alleges was not 'material.'" *Id.* at 1107. In turn, "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a "material" misrepresentation, and courts must defer to that determination." *Id.*

That reasoning applies here. The California Legislature prohibited the misleading practice Sony employs, making the disclosure material. The ownership rights consumers have in digital goods *do* matter to consumers, and consumers were misled into purchases they would not otherwise have made. Compl. ¶¶ 70-74; 128. That means there is standing under *Hinojos*. Sony's contrary argument rests chiefly on the short, unpublished opinion in *Morehouse v. Apple, Inc.*, No. 25-cv-02988, 2025 WL 3525573, at *2 (N.D. Cal. Dec. 4, 2025), but that case does not even cite *Hinojos* and is not persuasive. Beyond that, *Morehouse* was pleaded as a price premium case about digital *books* which are widely available from other sellers; in that context, the lack of any price difference with other products made the allegation of injury implausible. Here, unlike

digital books, most PlayStation games (and all *digital* games) are only available from Sony. This is closer to *Kwikset*, which did not require alleging that "Made in U.S.A." products had a price premium, but only that it mattered to the plaintiff. *Kwikset*, 51 Cal. 4th at 333; *see also id.* at 334 n.20 (requiring no "premium," and noting that many "competitors use representations about features principally to increase market share").[1]

Sony also cites *McGee v. S-L Snacks Nat'l*, 982 F.3d 700 (9th Cir. 2020), but in that case the court found that the plaintiff's injury was based on her own "assumptions" and subjective expectations about a product, *id.* at 706. Here, the theory is that the terms "buy now" and "purchase" conveyed a misrepresentation about what rights the buyer would have. It was not only Plaintiffs' "assumptions," but rather their reasonable beliefs based on Sony's use of those particular words—beliefs that are protected by statute.

As for prospective relief, "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase" where the consumer "will be unable to rely on the product's advertising or labeling in the future." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018). Here, Plaintiffs cannot be confident of their rights, especially since Sony changes its terms of service frequently, does not include the disclosures required by law, and continues to use terms like "buy" and "purchase" that convey ownership rights.

## II. The Arbitration Clause Is Not Enforceable.

Sony moves to compel based on the 2026 "PlayStation Terms" Mot. at 1, and supplies a declaration affirming that each Plaintiff agreed to the most recent version of those Terms, *see* Mot. at 7 (citing Horne Decl. ¶¶ 7-17, 29, 34, 39, 44). The Court should

---

[1] Other district courts have upheld standing on similar facts. *E.g.*, *In re Amazon Prime Video Litig.*, No. 2:22-cv-00401, 2024 WL 1138906, at *3 (W.D. Wash. Mar. 15, 2024); *Andino v. Apple, Inc.*, No. 2:20-cv-01628, 2021 WL 1549667, at *2 (E.D. Cal. Apr. 20, 2021) ("the injury Plaintiff alleges is not, as Apple contends, that he may someday lose access to his purchased content. Rather, the injury is that at the time of purchase, he paid either too much for the product or spent money he would not have ….").

deny the Motion because the 2026 Terms are unconscionable. "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). Unconscionability has procedural and substantive components: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

### A. The 2026 Terms Are Procedurally Unconscionable.

Contracts of adhesion are automatically procedurally unconscionable to some degree, and further procedural unconscionability turns on oppression and surprise. *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 681 (9th Cir. 2024).

#### 1. The 2026 Terms are a contract of adhesion.

Procedural unconscionability "begins with an inquiry into whether the contract is one of adhesion." *OTO, L.L.C.*, 8 Cal. 5th at 126. That "term signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981). Sony drafted the contract, had bargaining power, and did not negotiate, so the 2026 Terms (and delegation clause[2]) is an adhesion contract. That "in itself" demonstrates procedural unconscionability. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 681 (9th Cir. 2024).

#### 2. The 2026 Terms are oppressive and surprising.

"Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice," while surprise "can arise when 'the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted

---

[2] *OTO L.L.C.* itself ruled a delegation clause unconscionable, since the arbitration agreement delegated "exclusive authority" to the arbitrator to determine "enforceability." 14 Cal. App. 5th 691, 717 (2017) (reproducing the agreement).

by the party seeking to enforce the disputed terms.'" *Id.* at 682 (quoting *Flores v. Transam. HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001), and *Patterson v. ITT Cons. Fin. Corp.*, 14 Cal. App. 4th 1659, 1664 (1993)). "The elements of oppression and surprise are 'satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Id.* (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006)).

The Arbitration Clause here is oppressive because of how Sony changed its terms. The circumstances mimic *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094 (2002). In *Szetela*, the consumer received "the amendment to the Cardholder Agreement in a bill stuffer," with the "option, if he did not wish to accept the amendment," of "closing his account." *Id.* at 1100. Here, Sony's 2026 Terms popped up on Plaintiffs' PlayStation one day and required them to "accept the PlayStation Terms for the user to maintain their access to PlayStation services." Horne Decl. ¶ 12. As in *Szetela*, the "oppressive nature in which the amendment was imposed"—a take-it-or-leave-it, unilateral change—"establishes the necessary element of procedural unconscionability." 97 Cal. App. 4th at 1100. The facts here are worse than *Szetela*, because if they did not agree, users would lose not only the possibility of *future* new services (new games, etc.) but also access to games they had previously bought (which, for Plaintiffs was "hundreds of dollars" worth, Compl. ¶¶ 7-14). They would "not receive a refund" even for "pre-paid products or services" and for "unused balance in your wallet." Horne Decl. Ex. A at 22.

The terms are also surprising. The arbitration clause changes were deeply buried in a long agreement, and how the delegation clause would be applied is surprising. Defendants switched from individual arbitration to a batch process, added a loser-pays provision, and a one-sided administrative conference requirement. Because the AAA rules apply "except to the extent any of those rules conflict with the terms of this Agreement," the arbitrator may be obliged to apply them. Horne Decl. Ex. A at 25.

**B. The 2026 Terms Are Substantively Unconscionable.**

The 2026 Terms are substantively unconscionable for multiple reasons.

**1. Section 14.7's one-sided conference condition is unconscionable.**

AAA's rules provide for an *optional* administrative conference that the parties *or* a representative may attend to discuss settlement, process, mediation, and similar issues before an arbitrator is appointed. Heinz Decl. Ex. 1 at 14 (R-13). The 2026 Terms *require* a pre-suit "administrative conference with the AAA" (not the arbitrator, who would not have been appointed yet), and requires that the plaintiff "shall appear" at that conference "regardless of whether your counsel attends." Horne Ex. A at 25-26. If the plaintiff "fail[s] to appear" the case must be dismissed. *Id.* No similar requirement to send a non-lawyer representative applies to *Sony*, and there is no penalty for *Sony* if no one attends. This purely a one-sided burden on the plaintiff before the arbitration even gets started, is wholly lacking "mutuality," and is for that reason unconscionable. *Nagrampa*, 469 F.3d at 1281. This requirement would be like requiring *every* plaintiff to show up personally to an early-stage MDL hearing or else have their case dismissed, but then minimize their testimony later by combining it into a 50-person batch trial.

**2. Section 15's loser-pays provision is unconscionable.**

The 2026 Terms include a provision providing that in a proceeding "to enforce any part of this Agreement, all costs and fees, including attorney's fees will be paid by the non-prevailing party." Horne Decl. Ex. A at 27. This precisely mimics the clause in *Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021), which held that a fee shifting provision for litigation that "is necessary to enforce or interpret the terms of this Agreement" was unconscionable, and that the unconscionability ran to the delegation clause. *Id.* at 997. The provision is contrary to the Consumer Legal Remedies Act's provision that a "prevailing plaintiff" is entitled to fees, but defendants receive them only upon a finding of bad faith. Cal. Civ. Code § 1780(e). Waiving this provision is "contrary to public policy" and "void." Cal Civ. Code § 1751. Defendants have forfeited a request for fees in this Court, and so presumably seek them in arbitration, but

it is illegal to "administer a consumer arbitration under any agreement or rule requiring that a consumer … pay fees and costs incurred by an opposing party if the consumer does not prevail." Cal. Civ. Proc. Code § 1284.3. Where, as here, statutory law provides asymmetric fee-shifting, a clause requiring "an award of attorneys fees" with "no finding of frivolity" is "unconscionable." *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 508 (2024). Were this not so, the fear of paying fees—even, for example, where the tribunal finds "parts of the Agreement unconscionable, sever[s] those parts … and enforce[s] the remainder"—would "chill" efforts to assert rights. *Id.* at 509.

**3. Section 17.1's liability and damages waiver is unconscionable.**

Section 17.1 has an astoundingly broad liability and damages waiver, providing that the "sole and exclusive recourse" for "damage arising from PlayStation or its products or services, or in connection with this agreement, and our maximum liability under this agreement or with respect to your use of or access to the services is limited to your direct damages, not to exceed the unused funds in your wallet" and expressly eliminating "all liability for … any other loss or damage … whether direct, indirect, incidental, special, or consequential and however arising, as a result of … using or accessing the services." Horne Ex. A. at 29 (modified to lowercase from all-caps for readability). California courts routinely find that such caps in arbitration are substantively unconscionable. *E.g.*, *Gostev v. Skillz Platform, Inc.*, 88 Cal. App. 5th 1035, 1058 (2023) ($50 cap in arbitration unconscionable); *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 663 (2022) ($2,500 cap in arbitration unconscionable); *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 825 (2010) ("the limitation of damages provision here is yet another version of a 'heads I win, tails you lose' arbitration clause that has met with uniform judicial opprobrium.").

**4. The arbitration clause is illusory and retroactive.**

The 2026 Terms apply retroactively to already-accrued claims, allow Sony to modify the clause unilaterally, and cannot be administered by AAA, which make them illusory and unconscionable. Under California law an "implied covenant" "prevents [a

party] from modifying an arbitration agreement once a claim has accrued." *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1474 (2013). That is because "an arbitration contract containing a modification provision is illusory"—and so unenforceable—"if … a contract change[ ]applies to claims that have accrued." *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1433 (2012). This rule prevents the drafter from "amend[ing] the contract in anticipation of a specific claim, altering the arbitration process to the [plaintiff's] detriment and making it more likely the [defendant] would prevail." *Id.* Here, there is no question that the claims had accrued before the April 2026 agreement. In fact, Plaintiffs sent a CLRA demand letter in that same month. Compl. ¶ 141. Sony "may modify the terms of the Agreement at any time" and mere "continued use … will signify acceptance." Horne Ex. A at 28. A consumer who does not wish to accept must "terminate … your Accounts." *Id.* Notably, terminating the account means losing all PlayStation games and data the consumer has purchased over many years. The modification in the 2026 Terms is therefore unconscionable for that reason alone as applied to these claims.

Beyond that problem, the 2026 Terms are illusory because Sony cannot actually arbitrate under them with the AAA. The 2026 Terms unambiguously state that AAA's rules "shall apply, except to the extent any of those rules conflict with the terms of this Agreement." Horne Ex. A at 25. The "Agreement" is defined as the entirety of the 2026 Terms. *Id.* at 3. AAA's rules conflict with the 2026 Terms such that they would not administer it. AAA reviews consumer arbitration clauses before administering them, requiring that they "substantially and materially compl[y] with the … Consumer Due Process Protocol." Heinz Decl. Ex. 3 at 1. "If a business has not registered its consumer clause prior to the filing of a consumer case, the AAA will require that the business registers its clause at that time." *Id.* AAA maintains a Consumer Clause Registry of clauses it has reviewed. *Id.* Sony's arbitration contract is *not* on that Registry, meaning it has not been reviewed by the AAA, and the AAA would not administer any arbitration until the 2026 Terms passed that review. *Id.* at 2.

The 2026 Terms would not survive review. For example, the 2026 Terms apply the AAA *commercial* rules to consumer cases with $75,000 at issue, but AAA applies its consumer rules to disputes of any size where the clause is "within a consumer agreement." *See* Heinz Decl. Ex. 1 at 7 (R-1(a)-(b)). AAA does not require a consumer to attend the administrative conference, *id.* at 14 (R-13) (or even the merits hearing, *see* R-29), while the 2026 Terms do. *See also* Heinz Decl. Ex 2 at 2 (Principle 9, the Right to Representation and Principle 12, the Right to a Fundamentally-Fair Hearing). The damages limitation and attorney-fee-shifting falls afoul of Principle 14, which guarantees "whatever relief would be available in court." *Id.* at 3. In sum, Sony has never registered its clause; it cannot under AAA's rules; and that likely is why the AAA Consumer Case Information statistics include just *one* filing against Sony Interactive Entertainment, LLC, and AAA never appointed an arbitrator. Heinz Decl. ¶¶ 10-14.

**5. The batching protocol is unconscionable because it is non-mutual and burdens the right to counsel of choice.**

So-called "Batch Arbitration" is triggered where "50 or more similar individual arbitration demands are filed *against* the same Sony Entity with the assistance of the *same law firm(s)*." Horne Ex. A at 26 (emphasis added). This provision is non-mutual on its face, since it applies only to claims filed against Sony, and is triggered only by the plaintiffs' counsel. The "provision imposes restrictions on a law firm representing [50] or more of [Sony's] customers with 'similar claims,' [Sony] is apparently free to select the same law firm to represent it in all of its arbitrations." *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1042-43 (N.D. Cal. 2022). Plaintiffs' counsel may feel pressure to "sideline any clients which would exceed the numeric cap," while Sony faces "enjoy[s] all of the advantages that come from being a 'repeat player.'" *Id.* This threatens to produce a conflict of interest between plaintiffs and their counsel, and burdens plaintiffs' "important right to counsel of one's choice," *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999).

**6. Unconscionability taints the delegation clause.**

Unconscionability affects the delegation clause specifically. "In deciding whether a delegation clause is unenforceable, our analysis is not limited to the bare text of the clause," but rather a party may "explain[] how 'unrelated' provisions make the delegation unconscionable." *Heckman*, 120 F.4th at 680 (citations and internal quotations omitted). "In evaluating an unconscionability challenge to a delegation provision under California law, a court must be able to interpret the provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1012 (9th Cir. 2023). A court must "consider the parts of the agreement that impact[] the delegation provision to decide its enforceability." *Id.* at 1011.

First, the administrative conference requirement undermines the delegation clause, because it harms plaintiffs before any arbitrator is appointed. No arbitrator could evaluate its enforceability until the question was moot. Second, the loser-pays provision is about challenges to the 2026 Terms (*i.e.*, the arbitration clause), meaning it applies within the delegation-clause-proceeding itself. The "unconscionable chilling effect of the fee-shifting provision" renders the "delegation clause … substantively unconscionable." *Lim*, 8 F.4th at 1004-05. Third, section 17.1's waiver of essentially all remedies goes to the delegation clause because it is not obvious that the arbitrator would have authority to nullify this section, since Sony's 2026 Terms state that they control over any contrary AAA rules that would otherwise provide the baseline. Fourth, both the retroactive application of the terms and their illusory nature run to the delegation clause. The delegation clause applies retroactively to accrued claims. The problems with registering the agreement and having AAA administer it plainly affect the delegation clause since, if correct, the argument means no arbitrator could be appointed to decide issues delegated to him or her. Fifth, the batching occurs before any threshold issues of arbitrability or enforceability are determined. The hearing on threshold issues would be tainted by the same unconscionability.

### C. The Infirm Provisions Are Not Severable.

California law provides that, if a court rules "any clause of the contract to have been unconscionable," it "may refuse to enforce the contract." Cal. Civ. Code § 1670.5(a). California courts "refuse to enforce an entire agreement if the agreement is 'permeated' by unconscionability," meaning "it 'contains more than one unlawful provision," since "'multiple defects indicate a systematic effort to impose arbitration ... not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage." *Lhotka*, 181 Cal. App. 4th at 826 (quoting *Armendariz*, 24 Cal. 4th at 124) (alterations in original). Here, Sony piled unconscionable clause upon unconscionable clause, taking every advantage for itself. Sony's unconscionable terms already have "produce[d] an unacceptable chilling effect." *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 114, 116-17 (2004). AAA's statistics (which go back five years) show only *one* arbitration filing against Sony Interactive Entertainment, LLC, and that arbitration never even commenced. Heinz Decl. ¶¶ 10-14.

The Court should not consider any other arbitration clause.[3] Notably (and unlike *Heckman*), the severability clause has no back-up agreement, back-up arbitration provider, or clause requiring reversion to a prior agreement. Sony did *not* move to compel based on its Software Product License Agreement or any prior Terms.

### D. The Public Injunctive Relief Claim Cannot Be Arbitrated.

The 2026 Terms require public injunctive relief to stay in court: "To the extent you or a Sony Entity seeks public injunctive relief (i.e., injunctive relief that has the primary purpose and effect of prohibiting acts that threaten future injury to the public), the entitlement to and extent of such relief must be litigated in court and not in arbitration." Horne Decl. Ex. A at 24. Even if the Court granted the motion, it should, at minimum, sever such claims so that they remain in court. *See* Compl. ¶ 150.

---

[3] Sony represents that each Plaintiff accepted the then-existing PlayStation Terms upon account creation in 2020, 2012, 2011, and 2016, but did not supply them. *See generally*, Horne Decl. Sony supplied the March 2025 and August 2023 Terms (Horne Decl. Exs. B, C), but never states Plaintiffs accepted those terms. *See* Horne Decl. ¶¶ 28-47.

### III. The Complaint States A Claim Because Sony Violated AB 2426.

Sony all-but-concedes it violated AB 2426 by failing to brief the elements. To escape, Sony instead injects its fine-print terms and software license agreements into a motion to dismiss,[4] claiming that *those* documents are clear, and that no consumer would care or be surprised anyway. If that is right, AB 2426 is a dead letter. It is not.

#### A. Sony Violated AB 2426.

As alleged in the Complaint, Sony used the words "Buy Now," "Purchase," and "Confirm Purchase." *E.g.*, Compl. ¶¶ 2, 21, 52. It plainly does "not obtain any affirmative acknowledgment from consumers." Compl. ¶ 108. And its disclosure is not "clear and conspicuous" and is not "distinct and separate" and does not state that buying the digital good is a license. This is true even as applied to the incomplete screenshots in the Horne Declaration. Sony is violating AB 2426 and barely argues otherwise.

Rather than address the requirements of the statute, Sony sidesteps the issue, arguing that because the link to its terms was available, "a reasonable user would have seen and reviewed them," which it contends "is sufficient in the Ninth Circuit to show Plaintiffs' unambiguous assent to those terms." Mot. at 11. The Motion then cites the exact same cases it discussed with respect to the motion to compel, which address contract formation, not compliance with AB 2426. This is simply the wrong test. Even if the notice were conspicuous enough to form a contract, that says nothing about

[4] Sony cites the Horne Declaration repeatedly for its Rule 12 arguments on the justification that the complaint incorporates the exhibits by reference on paragraphs 22, 39, and 56. Mot. at 7, n.2. This is not enough. These paragraphs simply say that Sony wrote the agreements, which convey only revocable licenses. This is not "extensive," does not "form the basis" for any claim, and is not on the same page. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (analyzing the doctrine). Sony's purchase flow screenshots are undated, and are only the "web" interface, not screens for a PlayStation or PlayStation app, which does not include blue hyperlinks among other differences. The text also conflicts with the screenshots. *See, e.g.*, Horne Decl. ¶ 21 (text says disclosure is "Below the 'Confirm Purchase' button," but the screenshot shows it above; text says the disclosure agrees "to complete the purchase with the Terms of Service" while the screenshot uses different wording).

whether it satisfied section 17500.6. It is illogical to move, as Sony does, from applying contract formation cases to the claim that its terms were "clearly and conspicuously disclosed, assented to, and acknowledged, within the meaning of … § 17500.6." Mot. at 12. Sony never explains which of the two routes it claims to have followed; how its small-print was "clear and conspicuous" under section 17500.6(a)(1); or how its all-in-one "Confirm Purchase" with small print was "distinct and separate" from other terms.

**B. Sony's Counterarguments Are Unpersuasive.**

Sony's relies on its license agreements, *see* Mot. at 12-14, but AB 2426 compliance does not turn on those. First, Sony argues that no reasonable consumer would be misled, Mot. at 11-12, but "whether a business practice is deceptive will usually be a question of fact not appropriate for decision" at this stage. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008). The disclosure is a link to Sony's prolix terms addressing many topics. A reasonable consumer could believe he *bought* a game by pressing "Buy Now." Second, Sony argues its misrepresentations were immaterial, Mot. at 12-13, but that too is a question of fact. *See, e.g.*, Compl. ¶¶ 8, 10, 12, 14, 74, 112. If using words like "Buy Now" and "Confirm Purchase," Compl. ¶¶ 2, 21, 101, without compliant disclosures is immaterial, AB 2426 cannot be enforced. The "legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Hinojos*, 718 F.3d at 1107. Third, Sony argues that Plaintiffs' reliance allegations are implausible because "Plaintiffs admit that the SPLA was disclosed to them," Mot. at 13, but that disclosure was insufficient under AB 2426. Besides, reliance "can be presumed, or at least inferred, when the omission [or misrepresentation] is material." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)).

The Court should reject each of Sony's arguments, but if it does dismiss the case, it should do so without prejudice to allow amendment.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: September 4, 2026

Respectfully submitted,

By: */s/ Noah Heinz*

Noah Heinz
Albert Pak
PAK HEINZ PLLC
20 F Street N.W., 7th Floor
Washington, D.C. 20001
Tel.: (202) 505-6354
Email: noah.heinz@pakheinz.com
Email: albert.pak@pakheinz.com
*Counsel for Plaintiffs*